UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONALD NELSON | * | CIVIL ACTION |
| | * | |
| | * | NO. 18-282-SDD-EWD |
| VERSUS | * | |
| | * | JUDGE SHELLY D. DICK |
| | * | |
| LA DEPT. OF PUBLIC SAFETY | * | MAGISTRATE JUDGE |
| AND CORRECTIONS, ET AL | * | ERIN WILDER-DOOMES |

**************************************************************************

MEMORANDUM IN SUPPORT OF
RULE 12(b)(1) & 12(b)(6) MOTIONS TO DISMISS

MAY IT PLEASE THE COURT:

NOW COMES, through undersigned counsel, Defendant, James M. LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections ("DPS&C"), who respectfully moves this Honorable Court to dismiss this suit pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6).

## I.   STATEMENT OF THE CASE

This suit is a 42 U.S.C. § 1983 action brought by Donald Nelson ("Plaintiff") against Secretary James M. LeBlanc ("Defendant LeBlanc"). Plaintiff is a private citizen who is the alleged sibling of "Mr. Timothy Lenior," an inmate in the custody of DPS&C at Louisiana State Penitentiary ("LSP"), Angola, Louisiana. On September 10, 2017, plaintiff allegedly traveled to LSP to visit Inmate-Lenior. During plaintiff's screening to enter LSP, plaintiff allegedly walked through the SecurePass machine wherein an "unknown object" was detected in plaintiff's pants. Alerted to the presence of the unknown object, LSP personnel allegedly questioned the plaintiff regarding the object detected by the SecurePass machine. Plaintiff, who alleges to outwardly present as a female while being born a biological male, indicated that plaintiff's driver's license stated plaintiff's gender as being male, and that the unknown object was plaintiff's genitalia.

1

At this juncture, LSP personnel allegedly brought plaintiff to another room in the intake facility and asked plaintiff to submit to a search. Plaintiff refused to submit to a search and stated that plaintiff wished to leave LSP. After asserting plaintiff's wish to leave, plaintiff was allegedly taken to another room in the intake facility where an LSP supervisor allegedly asked plaintiff once more to submit to a search. Once again, plaintiff refused to submit to a search, and was allowed to return to plaintiff's vehicle. At plaintiff's vehicle, an LSP supervisor allegedly approached plaintiff with nine other correctional officers and allegedly demanded that plaintiff submit to a search. Plaintiff once again refused to submit to a search. Plaintiff alleges that LSP personnel asked to search the plaintiff's vehicle, and that plaintiff consented to having the vehicle searched.

After being allowed to leave the facility, and not submitting to a search of plaintiff's person, plaintiff allegedly received a letter on September 11, 2017 from Deputy Warden of Security for LSP, Leslie Dupont, stating that plaintiff had been removed from the approved visiting list of "Mr. Timothy Lenoir" for a period of six (6) months.

As a result of the foregoing, Plaintiff brought the instant suit under 42 U.S.C. §1983, on March 13, 2018, originally alleging that DPS&C violated plaintiff's rights under the United States Constitution and Louisiana state law.[1] On April 30, 2018, former Defendant DPS&C filed a Motion to Dismiss.[2] On May 22, 2018 the Plaintiff filed an *Amended Complaint* removing DPS&C as a defendant, and adding Secretary James M. LeBlanc, who was ultimately served on September 27, 2018.[3]

II.     **LAW**

      a. **FED. R. CIV. P. 12(b)(1)**

---

[1] Rec. Doc. 1.
[2] Rec. Doc. 7.
[3] Rec. Doc. 11 & 23.

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims.[4] Under Federal Rules of Civil Procedure Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim.[5] A court should consider a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.[6] Considering a Rule 12(b)(1) motion to dismiss first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice."[7]

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6).[8] A complaint is subject to dismissal under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted."[9] In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.[10] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[11]

In ruling on a 12(b)(1) motion, however, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments."[12] A motion

---

[4] *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.,* 668 F.3d 281, 286–87 (5th Cir. 2012); *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998).

[5] *Id*.

[6] *Id.*

[7] *Id.*

[8] *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir.1992).

[9] FED. R. CIV. P. 12(b)(6).

[10] *City of Clinton v. Pilgrim's Pride Corp.,* 632 F.3d 148, 152–53 (5th Cir. 2010).

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12] *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009), *cert. denied,* 558 U.S. 1111 (2009); *Ramming v. U.S.,* 281 F.3d 158, 161 (5th Cir. 2001) (stating that a court ruling on a Rule 12(b)(1) motion may evaluate "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").

to dismiss for lack of subject matter jurisdiction should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief.[13]

However, "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."[14] "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."[15] A pleading stating a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction[.]"[16] In federal question cases, the party must demonstrate a non-frivolous claim based on federal law.[17] When a district court finds it lacks subject matter jurisdiction, its determination is not on the merits of the case, and does not bar the plaintiff from pursuing the claim in a proper jurisdiction.[18]

### b. FED. R. CIV. P. 12 (b)(6)

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint."[19] These factual allegations must raise a right to relief above the speculative level.[20] The Supreme Court has explained "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[21] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22] It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of

---

[13] *Wagstaff v. United States Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007).
[14] *Celestine v. TransWood, Inc.*, 467 Fed. Appx. 317, 318 (5th Cir. 2012).
[15] *Id.*
[16] *Id.*
[17] *Gibbs v. Buck*, 307 U.S. 66, 72 (1939).
[18] *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).
[19] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[20] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[21] *Ashcroft v. Iqbal*, 556 U.S. at 678 (2009)(quoting *Twombly*, 550 U.S. at 570).
[22] *Id.*

misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'"[23]

This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[24] Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"[25] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[26] "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[27]

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[28] The Supreme Court, quoting *Twombly*, acknowledged that a plaintiff cannot open the door to discovery by pleading only conclusions:

> Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as factual allegation. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.[29]

Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[30]

## III.    ARGUMENT

### a.  12(b)(1) MOTION TO DISMISS

---

[23] *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).
[24] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.* at 678-679.
[30] *Id.*

### i.   RIPENESS

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'"[31] The question of ripeness turns on "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration."[32]

Plaintiff has filed this suit in search of injunctive relief "including but not limited to an order lifting the restriction preventing Donald Nelson from visiting offender Timothy Lenoir No. 298168 and restraining Defendant from engaging in further discriminatory conduct…" Plaintiff's *Amended Complaint* references a Warden's Restriction Letter issued to the plaintiff on September 11, 2017 which clearly outlines that an appeal of the decision to suspend the plaintiff's visiting privileges may be taken with the Secretary of the Department of Public Safety and Corrections.[33] Plaintiff never exercised this right of appeal.[34] Furthermore, Department Regulation No. C-02-008 Section 20(C)(3) clearly states that:

> Reinstatement of visiting privileges for visitors who are removed for a fixed period of time may only be considered upon written request from the offender following the procedures detailed in Section 12.B. of this regulation…[35]

The offender in question, Mr. Timothy Lenoir (DOC# 298168) has never submitted such request for the plaintiff's visiting privileges to be reinstated.[36] Plaintiff is also undoubtedly aware,

---

[31] *National Park Hospitality Ass'n v. DOI*, 538 U.S. 803, 807-08, 155 L. Ed. 2d 1017, 123 S. Ct. 2026 (2003)
[32] *Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development Comm'n*, 461 U. S. 190, 205, 103 S. Ct. 1713, 75 L. Ed. 2d 752 (1983)
[33] Exhibit 1.
[34] Exhibit 2.
[35] Exhibit 3.
[36] Exhibit 4.

or should be reasonably aware, that such is the proper procedure, as she cites Department

Regulation No. C-02-008 in her *Amended Complaint.*[37]

## ii.   STANDING

"In essence the question of standing is whether the litigant is entitled to have the court

decide the merits of the dispute or of particular issues. This inquiry involves both constitutional

limitations on federal-court jurisdiction and prudential limitations on its exercise."[38]

As stated above, Department Regulation No. C-02-008 Section 20(C)(3) clearly states that

only inmates may request reinstatement of visiting privileges for visitors who are removed for a

fixed period of time. The plaintiff is a visitor, not the inmate, and thus has no grounds to bring a

suit regarding the resolution of the restriction placed upon her visiting privileges to inmate

Timothy Lenoir.

## b.  12(b)(6) MOTION TO DISMISS

## i.   SUPERVISOR LIABILITY

Plaintiff fails to state a claim against Defendant LeBlanc because supervisors cannot be

held liable for their subordinates' acts under § 1983.  It is firmly established that individual liability

under § 1983 may not be predicated on the vicarious liability doctrine of *respondeat superior.*[39]

"Liability in a civil rights action cannot be based on *respondeat superior* alone, and defendants in

such actions must be alleged to have had personal involvement in the wrongs complained of."[40]

Only the direct acts or omissions of government officials, not the acts of subordinates, will give

rise to individual liability under § 1983.[41]

---

[37] Rec. Doc. 11 at page 6.
[38] *Barrows v. Jackson*, 346 U.S. 249, 255-256 (1953).
[39] *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).
[40] *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015)
[41] *Alton*, 168 F.3d at 200; *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (en banc);*Coleman v. Houston Independent School District*, 113 F.3d 528, 534 (5th Cir. 1997): *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th

In the instant suit, Plaintiff names Secretary James LeBlanc as a defendant. To the extent that Plaintiff is alleging that Defendant LeBlanc is liable for any acts or omissions of employees of Louisiana State Penitentiary, one of many correctional facilities within DPS&C, Plaintiff's claims fail. The substance of Plaintiff's *Complaint* does not allege that Defendant LeBlanc is or was ever personally involved in suspending plaintiff's visiting privileges is LSP, attempting to conduct a search of the plaintiff's person on the date of alleged incident, or otherwise having any form of involvement. Plaintiff's claims against Defendant LeBlanc rest upon nothing more than his position as the Secretary of DPS&C and as a supervisory official.  Pursuant to well-settled legal principles, in order for a prison official to be found liable under § 1983, the official must have been personally involved in conduct causing an alleged deprivation of constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed.[42] No such relationship has been asserted by the plaintiff.

Any allegation that defendants are responsible for the actions of their subordinates or co-employees is insufficient to state a claim under § 1983.[43] Therefore, all claims against Defendant LeBlanc based on supervisory liability should be dismissed.

### ii.        *INJUNCTIVE RELIEF*

Plaintiff's claims for injunctive relief against Defendant LeBlanc in his official and individual capacity are deficient on the face of the *Amended Complaint*, and should be dismissed pursuant to rule 12(b)(1) the Federal Rules of Civil Procedure.

---

Cir. 1994) (en banc); *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 601 (5th Cir. 1988); *Lopez v. Houston Indep. Sch. Dist.*, 817 F.2d 351, 355 (5th Cir. 1987), overruled on other grounds, *Walton v. Alexander*, 44 F.3d 1297, 1303 n. 4 (5th Cir. 1995) (en banc); *Kline v. North Tex. State Univ.*, 782 F.2d 1229, 1235 (5th Cir. 1986); *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985); *Polk County v. Dodson*, 454 U.S. 312, 325 (1981).

[42] *Lozano v. Smith*, 718 F.2d 756, at 768 (5th Cir. 1983).

[43] *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."[44]

Plaintiff admits in the *Amended Complaint* that visitation of an inmate is a privilege, not a right without restriction. The foundation for plaintiff's claim that this privilege was unconstitutionally abridged and her request for injunctive relief is the allegation that 1.) the requested strip-search had no legitimate penological goal, and 2.) that the attempted search was unreasonable. Both of these assertions are conclusions of law, not statements of fact, and thus need not be taken as true in a 12(b)(6) motion. The 5th Circuit has stated that "there [is] no authority for the proposition that strip searches of prison visitors are *per se* reasonable."[45] The facts presented in plaintiff's *Amended Complaint* clearly evidence that the search had a valid penological goal and was reasonable.

Stemming the flow of contraband materials, especially weapons and narcotics, onto prison grounds is one of the most paramount and vital duties of prison officials. Weapons and drugs represent an open and obvious threat to the safety and security not only of Corrections Officers, but also to inmates within the prison. Visitors to LSP, including Corrections Officers and state attorneys, are subject to the various search procedures and rules regarding the introduction of contraband items onto prison grounds. In order to maintain security, prisons implement strict policies regarding search procedures of any person entering prison grounds. Plaintiff alleges that

---

[44] *eBay Inc. v. MercExchange, L. L. C.*, 547 U. S. 388, 392, 126 S. Ct. 1837.
[45] *Thorne v. Jones*, 765 F.2d 1270, 1277 (5th Cir. 1985).

at the time of plaintiff's visit, the plaintiff was asked to pass through a "SecurePass" machine and

that the machine detected an "unknown object" in her pants.[46] The detection of an unknown object

by a machine designed to detect contraband is alone sufficient to establish that the requested search

of the plaintiff had a valid penological purpose. By plaintiff's own admission in her telling of the

facts in the *Amended Complaint*, prison personnel did not request to search her person merely on

the basis that she is a transgender woman, but rather, because the SecurePass machine detected an

unknown object on her person.

In regards to the whether or not the requested search was reasonable, the 5th Circuit has

state that: "To justify the strip search of a particular visitor under the reasonable suspicion standard,

prison officials must point to specific objective facts and rational inferences that they are entitled

to draw from those facts in light of their experience. Inchoate, unspecified suspicions fall short of

providing reasonable grounds to suspect that a visitor will attempt to smuggle drugs or other

contraband into the prison."[47] Plaintiff admits in his *Amended Complaint* that SecurePass machine

detected an unknown object on her person. The purpose of the SecurePass machine is to detect

contraband and items which may be hazardous or pose a threat to prison security. A more thorough

search of "unknown objects" detected by such specialized machines is part and parcel of

contraband detection procedures, and the detection of such "unknown objects" is a solid

foundation for establishing a reasonable suspicion that a visitor may be harboring prohibited items.

In the *Amended Complaint*, the Plaintiff attempts to circumvent this logic by explaining that no

such search for contraband was necessary because she pointed out to the corrections officers that

her driver's license, one of the most commonly forged documents in the United States, stated that

she was biologically male and that the "unknown object" was, in fact, her male genitalia.

---

[46] Rec. Doc. 1 at page 2.
[47] *Thorne v. Jones*, 765 F.2d 1270, 1277 (5th Cir. 1985) citing *Hunter v. Auger*, 672 F.2d 668, 674 (8th Cir. 1982).

Corrections Officers are under no obligation to "take the plaintiff's word for it" that the "unknown object" is male genitalia and forgo a search of the plaintiff's person when a machine designed to detect contraband has detected something suspect, and such an explanation by the plaintiff is insufficient to snuff out the reasonable suspicion held by the officers that she may possess contraband items.

Thus, based on the facts presented in the plaintiff's *Amended Complaint*, it is clear that prison personnel had a valid penological goal in requesting that the plaintiff submit to a search, and that the request for a search was not itself unreasonable given the circumstances.

### iii.    QUALIFIED IMMUNITY

The qualified immunity defense is a familiar one, and operates to protect a public official who is performing a discretionary task.[48] Government officials performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[49] Qualified immunity allows officials the freedom to exercise fair judgment, protecting "all but the plainly incompetent or those who knowingly violate the law."[50]  Actions and decisions made by officials that are merely inept, erroneous, ineffective or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity.[51]  The U.S. Supreme Court has repeatedly stressed that the immunity issue must be resolved at the earliest possible stage of the litigation since it entails not merely a defense to liability, but is instead immunity from suit and an entitlement not to stand trial or face the other burdens of litigation.[52]

---

[48] *Hale v. Townley*, 45 F.3d 914, 917 (5th Cir. 1995).
[49] *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982).
[50] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).
[51] *Alton v. Texas A&M University*, 168 F.3d 196, 201 (5th Cir. 1999).
[52] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Saucier v. Katz*, 533 U.S. 194, 202 (2001)

The Courts have traditionally used the two step method in determining whether a defendant is entitled to qualified immunity. The first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights.[53] In the second step, a court must determine whether the right allegedly violated was clearly established at the time of the infraction.[54] The sequencing of the analysis has been left to the discretion of the District Court Judges to determine which of the two prongs should be analyzed first.[55] This inquiry must be undertaken in light of the specific factual context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable official that his conduct was unlawful in the situation which he confronted.[56]

"Once defendants assert the qualified immunity defense '[t]he plaintiff bears the burden of negating qualified immunity…but all inferences are drawn in his favor."[57] Specifically, a plaintiff must show that (1) the defendants committed a constitutional violation under current law; and (2) the defendants' actions were objectively unreasonable in light of the law that was established at the time of the actions complained of.[58]

FIRST PRONG

Under the first prong of the qualified immunity inquiry, the Defendants' conduct did not violate Plaintiff's constitutional rights taking the facts as alleged. Utilizing the first test, a court must determine whether Plaintiff has alleged a violation of a clearly established constitutional

---

[53] *Pearson*, 555 U.S. at 232.

[54] *Id.*

[55] *Id*. at 236.

[56] *Id.*

[57] *Brauner* at 497 (citing *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010)).

[58] *Zaunbrecher v. Gaudin,* 641 Fed.Appx. 340, 344 (5th Cir. 2016)(unpublished)(citing *Atteberry v. Nocona Gen. Hosp.,* 430 F.3d 245, 253 (5th Cir. 2005)).

right.[59]  This is a "purely legal question" to be determined by the Court.[60]  The court uses currently

applicable constitutional standards to make this assessment.[61]  Plaintiff bears the burden of pleading

such a violation of clearly established law.[62]

Here, Plaintiff's only allegation is a general allegation made against Defendant LeBlanc

that he is responsible for the actions of officers at LSP who issued a visiting restriction against the

plaintiff on the basis that she refused to consent to an "unreasonable" strip search.  However, as

discussed above, Plaintiff fails to offer anything more than "legal conclusion[s] couched as …

factual allegations"[63] and "naked assertions [of unlawful conduct] devoid of further factual

enhancement."[64]  This is especially salient when Plaintiff later admits in his *Amended Complaint*

that corrections officers not only detected an "unknown object" on plaintiff's person using a

SecurePass machine, but also, the fact that no strip search was ever actually conducted.

Accordingly, Plaintiff's *Amended Complaint* contains nothing more than an unsupported,

conclusory allegation that her rights were violated by Defendant LeBlanc in his role as supervisor

of DPS&C when a legitimate search of the plaintiff was *requested* by staff at LSP.  At best, this

allegation asserts a medical negligence or medical malpractice claim, but claims such medical

malpractice claims are not cognizable under § 1983, and Plaintiff's dispute with medical staff over

the type of medical treatment he should receive does not give rise to a § 1983 cause of action.[65]

---

[59] *Saucier*, 533 U.S. at 201.
[60] Siegert v. Gilley, 500 U.S. 226, 231-32 (1991).
[61] *Saucier*, 533 U.S. at 201.
[62] See *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).
[63] *Papasan v. Allain*, 478 U.S. 265, 286 (1986).
[64] *Iqbal*, 556 U.S. at 678.
[65] *See* Cuellar v. Livingston, 321 Fed. Appx. 373, 374 (5th Cir. 2009) (upholding the dismissal of an inmate's claim as frivolous, noting that "the question whether 'additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment,'" *quoting* Estelle, *supra*, 429 U.S. at 107).

As such, there is no violation of a clearly established law and the defendants' conduct does not violate an established constitutional right and the defendants are entitled to immunity under the first prong of the qualified immunity analysis.

SECOND PRONG

The Defendant further asserts that even if Plaintiff could establish the violation of her constitutional rights, Defendant LeBlanc is entitled to qualified immunity under the second prong because any such violation was not objectively contrary to clearly established law.  The Defendant's conduct was not objectively unreasonable under the circumstances and his actions were not clearly unlawful.  Plaintiff does not, at any place in his *Amended Complaint*, assert any facts suggesting that Defendant LeBlanc played a role in issuing a Warden's Restriction on plaintiff's visiting privileges. Even if the Defendant had participated in some manner, the issuance of the restriction does not on its face show that there was reckless disregard for clearly established laws.

Therefore, the Defendant LeBlanc is entitled to qualified immunity under the second prong of the qualified immunity analysis.

## IV.    CONCLUSION

For the forgoing reasons, Plaintiff's claims are unripe, and even if plaintiff's claims have significantly matured to such a degree that this Honorable Court could grant relief, the plaintiff lacks proper standing to bring this suit. Moreover, for the foregoing reasons, and based upon the allegations in the Plaintiff's complaint, any individual capacity § 1983 claims against Defendant LeBlanc should be dismissed because the doctrine of supervisor liability is not applicable to § 1983 claims. Since Defendant LeBlanc has no personal involvement in the alleged incident giving rise to this suit, and since he has been named purely on the basis of his supervisory role, Defendant LeBlanc should be dismissed. Injunctive relief requested against Defendant LeBlanc should also

be dismissed, as the facts set forth in plaintiff's own *Amended Complaint* make it clear that the plaintiff has failed to exhaust reasonable alternative avenues for obtaining her desired results. Furthermore, Defendant LeBlanc is entitled to Qualified Immunity.

Respectfully submitted,

*/s/ Jonathan R. Vining*
**JONATHAN R. VINING (#30781)**
General Counsel
LA Department of Public Safety & Corrections
P.O. Box 94304, Capitol Station
Baton Rouge, La. 70804-9304
Telephone:    (225) 342-6728
Facsimile:     (225) 342-3278
Email: jvining@corrections.state.la.us

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on the 18th day of October, 2018, the foregoing was filed electronically with the Clerk of Court by using the CM/ECF system.  Notice of this filing will be sent to all parties who participate in electronic filing by operation of the court's electronic filing system.

_____*/s/ Jonathan R. Vining*_____
Jonathan R. Vining